# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KATRINA GRIDER | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| | § | |
| ANDREA R. LUCAS, Acting Chair, | § | |
| U.S. Equal Employment Opportunity | § | JURY DEMANDED |
| Commission, | § | |
|     Defendant. | § | |

## COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff KATRINA GRIDER, in the above numbered and entitled case, complains of ANDREA R. LUCAS, ACTING CHAIR OF THE U.S EQUAL EMPLOYMENT OPPORTUNITY COMMISSON (EEOC). (Hereafter, "Defendant", "Agency," "EEOC"), Defendant in the above numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

## I.  PARTIES

1.      Plaintiff KATRINA GRIDER (Hereafter "Ms. Grider" or "Plaintiff" is a is a citizen of the United States, who is employed as a Supervisory Attorney-Advisor (GS-905-15 Step 10) and the Associate Director of Curriculum, Training, and Education, EEOC Revolving Fund Program, Field Coordination Programs (FCP), Office of Field Programs (OFP) by the U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, at the Agency's headquarters in Washington, D.C., during the time period wherein the present cause of action arose. Ms. Grider has been officially employed by the EEOC from October 26, 2020 until present.

Ms. Grider is a federal employee within the meaning of Sections 701(f) and 717(a) of Title VII, 42 U.S.C. § 2000e(f) and 16(a), The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, the Rehabilitation Act of 1973, as amended, at 29 U.S.C. § 794 (the "Rehabilitation Act"), 29 U.S.C. §§ 701-7961 (2006) and at all relevant times was a federal employee. Ms. Grider is a resident of the city of Cypress, Harris County Texas.

2.       Defendant, ANDREA R. LUCAS, is the ACTING CHAIR OF THE U.S EQUAL EMPLOYMENT OPPORTUNITY COMMISSON, which is an agency of the United States government. Defendant does business at the U.S. Equal Employment Opportunity Commission. 131 M. Street, NE, Washington, DC 20507. Defendant ANDREA R. LUCAS is sued in her official capacity as the ACTING CHAIR OF THE U.S EQUAL EMPLOYMENT OPPORTUNITY COMMISSON, and as such, is amenable to suit as provided in Sections 701(f) and 717(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(f) and 16(a), The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b), Sections 501 and 505 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. § 794 (the "Rehabilitation Act"), 29 U.S.C. §§ 701-796 (2006), and may be served by serving Acting Chair ANDREA R. LUCAS.

## II.    JURISDICTION

3.       This action arises under Title VII of the Civil Rights Act of 1964, Section 701 *et seq.*, as amended 42 U.S.C. § 2000e, *et. seq.*, 29 C.F.R. § 1614 *et. seq.*, The Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq.*, 29 C.F.R. 1614.203(b) 2008, and the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act"), and 28 U.S.C. § 1346.

4.      All the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of unlawful retaliation, harassment and discrimination with her federal employer, the EEOC, and brings her claims more than 180 days after she filed her formal complaint (EEO Complaint No. 2024-0012).

5.      On November 11, 2024, the Defendant issued its Final Agency Decision for EEO Complaint No. 2024-0012, regarding the claims that are identified in this federal complaint.

6.      The jurisdiction of the Court is invoked pursuant to 28 US.C. § 1343(a)(4) and 42 U.S.C. § 2000e-5.

**III.     VENUE**

7.      Venue is appropriate in this District pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 2000e-5(f)(3) because the Defendant resides in this judicial district, and where Plaintiff was physically employed when the actions complained of took place.

**IV.     FACTS**

8.      On January 1, 2023, Ms. Patricia St. Clair, Director, Field Coordination Programs (FCP), Office of Field Programs (OFP), became Plaintiff's immediate supervisor.  On June 21, 2024, Ms. St. Clair testified that she was aware that Plaintiff had a disability, and that Mr. Brett Brenner (Deputy Chief Operating Officer) told Ms. St. Clair sometime in the second quarter of Fiscal Year (FY) 2023 (January and March 2023) that the Plaintiff had been granted an interim accommodation which allowed her to situationally telework.

9.      On January 18, 2023, Plaintiff filed EEO Complaint Number 2023-0013 seeking a reasonable accommodation due to her disability. A resolution and settlement were reached on March 9, 2023, which was closed on March 15, 2023.

3

10.     On March 14, 2023, the Agency posted a 60-day detail for the DEIA Director Detail-OCRDI position.  The Plaintiff was well qualified for this position and submitted her completed application packet on March 20, 2023, in a timely manner. Plaintiff's qualifications and experience were outlined in her application cover letter and resume. Plaintiff did not receive any interview or notification as to the status of this position. Plaintiff then followed up by email on August 29, 2023, as to the status of this position and did not receive any response.

11.     On September 15, 2023, Plaintiff was notified that the position was filled. Plaintiff responded with a follow-up request seeking information about when the position was filled and who was selected and did not receive any response. No response was forthcoming. Further, Plaintiff was not notified of whether she made the certificate list, which the Commission is required to do. Plaintiff was well qualified for the Detail position.

12.     On June 11, 2024, Maria Kaplan, Acting Director, Office of Civil Rights, Diversity and Inclusion (OCRDI) at that time, testified that Ms. Molly Powell was selected for the March 14, 2023 Detail because she "had demonstrated DEIA experience and had worked with several volunteer employee groups in EEOC. She was also familiar with our team by virtue of her working with our team in a detail capacity as a Special Assistant." Plaintiff alleges that the Agency violated the OPM Merit System Principles because it never posted the Special Assistant Detail, and pre-selected Ms. Powell for the Detail.

13.     On June 21, 2023, the Agency posted the Supervisory Attorney Adviser (General) GS-0905-15 OCRDI DEIA Director position ("Director") (Announcement Number DE-11996572-23-RB). Plaintiff was well qualified for this position and submitted her completed application packet on June 29, 2023, in a timely manner. Plaintiff was notified on July 24, 2023, that she was scheduled for an interview on July 27, 2023.  Plaintiff was then interviewed on July

4

27th by a panel that included: 1) Cynthia Pierre, former Chief Operating Officer (COO); 2) Mr. Brenner, Acting Chief Operating Officer who was one of those named in Plaintiff's former EEO Complaint resolved on March 9, 2023; and 3) Glory Gervacio, OCRDI Acting Director.

14.     During the interview, Ms. Pierre said the Agency received over 70 applications for the position and that it would be several weeks before she heard back from someone regarding her selection for the Director position. Instead, Plaintiff learned less than a week later, on August 2, 2023, of her non-selection for the Director position for which she was well qualified. Plaintiff learned that Ms. Molly Powell received the position. Plaintiff's qualifications for the Director position were observably superior to that of the selectee, Ms. Powell.

15.     Since these positions have negotiable locations, Plaintiff alleges that the Responsible Management Officials (RMOs) identified in her prior EEO Complaint (resolved on March 9, 2023) Brett Brenner, Deputy Chief Operating Officer, and Delner Franklin-Thomas, former OFP Acting Director, one or more of the RMOs responsible for the detail assignment; and one or more of the RMOs who were the decisionmakers for the Director position (including Cynthia Pierre, Chief Operating Officer, and Glory Gervacio, Acting OCRDI Director, have, through their comments and actions, attempted to and/or engaged in a concerted effort to deny Plaintiff from obtaining such positions to keep her from advancing and from having a negotiable duty location due to reprisal from prior EEO activity and based upon her mental disability.

16.     Plaintiff has endured repeated acts of non-sexual harassment and reprisal since filing her EEO complaint (resolved on March 9, 2023). By way of example, on May 3, 2023, Ms. St. Clair yelled at Plaintiff in a condescending, dictating, and confrontational tone of voice and talked over her assigning a task. Ms. St. Clair's behavior was so upsetting and stressful to Plaintiff that she went to the emergency room that evening and took sick leave the next two days. Two days

later, Ms. St. Clair continued her condescending tone and made inaccurate statements in an email to Plaintiff regarding the completion of these tasks.

17. On May 8, 2023, Plaintiff responded to Ms. St. Clair's email and copied Plaintiff's second-line supervisor, Ms. Franklin-Thomas. On yet another occasion on August 21, 2023, Ms. St. Clair verbally reprimanded Plaintiff for simply copying EEOC Chair Charlotte Burrows and Ms. Pierre on Plaintiff's email to Ms. St. Clair's regarding her failure to nominate Plaintiff for a FY-2023 Chair's Honor Award.

18. On August 29, 2023, Ms. St. Clair said that she did not nominate Plaintiff for an Honor Award because Plaintiff had done nothing new from last year. Plaintiff demonstrably did quite a bit more work than in FY-22. In FY-23, Plaintiff managed 30 workshops and manually processed over 6,617 registrations which equates to 38% of the total number of workshops and 45% of the total number of registrations for the last four years of virtual workshops, along with performing new and additional responsibilities in connection with these tasks. While Chair Burrows decides the recipients for awards, Plaintiff's point is that she was eligible and well qualified to receive a *nomination and the recognition that goes with it* but for the fact that Plaintiff had prior EEO activity.

19. Plaintiff filed her second EEO Complaint on September 14, 2023, and Defendant subjected her to continuing acts of non-sexual harassment discrimination and reprisal as noted by some of the examples below.

20. Plaintiff reported to her duty station in Washington D.C. from October 23, 2023, through November 3, 2023. Upon arrival, Plaintiff discovered that she had been assigned a smaller office than the other Revolving Fund Associate Director – Management and Administration, Mr.

Tim Cannon. Mr. Cannon began employment around October 10, 2023. Mr. Cannon and Plaintiff are both in the same GS-15 grade, and Plaintiff had three years more seniority.

21.     On October 6, 2023, Plaintiff applied for the EEOC Senior Executive Service Candidate Development Program (SESCDP) for which she was eligible and well qualified.

22.     On October 24, 2023, Ms. St. Clair told Plaintiff that she would be supervising administrative staff and a marketing person for FY-2024. Only after Plaintiff filed two EEO complaints did Ms. Franklin-Thomas and Ms. St. Clair finally allow Plaintiff to formally supervise anyone, even though she had demonstrated supervisory skills for the last three years. Defendant penalized Plaintiff depriving her of the opportunities to use these skill sets, as Plaintiff's supervisory, management, and leadership skills were expressly acknowledged in the outstanding performance ratings that she received in her FY-22 and FY-23 performance appraisals. Defendant's actions prevented Plaintiff from enhancing her Executive Core Qualifications (ECQs). Plaintiff has been denied positions and opportunities as addressed herein that would have allowed her to build on these skill sets and supervise a team or unit.

23.     On October 25, 2023, and October 30, 2023, Ms. St. Clair told Plaintiff that she was reviewing SESCDP applications and had a November 3, 2023, deadline to submit candidate selections.

24.     On October 25, 2023, Plaintiff made an informal request for reasonable accommodation in person to Ms. St. Clair to move into the vacant office next door to Plaintiff, which has two windows. Plaintiff advised Ms. St. Clair that the extra window would accommodate Plaintiff's need to have as much daylight as possible during the winter to manage her Seasonal Affective Disorder (SAD) and it would also help Plaintiff manage the glare from the fluorescent lights due to her cataract lens. Ms. St. Clair said that she knew about SAD because one of her

girlfriends has the same condition. Plaintiff turned off the lights in the office and demonstrated to Ms. St. Clair that Plaintiff could manage the glare with the office lamps that she purchased. Later that morning, Ms. St. Clair told Plaintiff that the vacant office was reserved for Ms. Gervacio when she returned to the OFP from her current detail as the OCRDI Acting Director. Ms. St. Clair further advised Plaintiff that Plaintiff could make a formal reasonable accommodation request regarding the glare issues in her office but failed to take any steps at that point.

25.    Plaintiff alleges that: Ms. St. Clair's refusal of Plaintiff's informal request for reasonable accommodation is not only an improper denial of such request for a reasonable accommodation and failure to engage in an interactive process, but also: 1) reprisal based due to Plaintiff's prior EEO complaint and Ms. St. Clair's direct knowledge of Plaintiff's mental disability from prior discussions including a specific discussion on June 26, 2023; and 2) reprisal resulting from Ms. St. Clair's reprimanding Plaintiff on August 21, 2023. It is further reprisal because Ms. Gervacio is the RMO identified in this complaint; and Plaintiff had nearly three years more seniority than Ms. Gervacio (GS-15). Plaintiff did not make a formal reasonable accommodation request because she did not want to be subjected to further reprisal. The office remains vacant.

26.    In two different Senior Staff meetings since November 2023, Ms. Franklin-Thomas ignored Plaintiff's raised hand during the meetings. In the first example, the person who raised their hand after Plaintiff, interceded, and allowed Plaintiff to speak first. In the second example, Plaintiff had to interject at the end of the conversation to speak. Ms. Franklin-Thomas' unprofessional conduct is demeaning continuing non-sexual harassment and is additional reprisal for Plaintiff's filing two EEO complaints and due to her known disability.

27.     On December 7, 2023, Plaintiff asked about the status of her SESCDP application and received a response the next day that the selection process was ongoing, and candidates would be notified in January.

28.     On December 11, 2023, Mr. Thomas Colclough, Director, Field Management Programs (OFP), told Plaintiff that he had been conducting ongoing SESCDP candidate interviews since November. Ms. St. Clair also told Plaintiff that she was conducting candidate interviews as well. It is Plaintiff's understanding that Mr. Colclough and Ms. St. Clair were decisionmakers as to this program and are involved in the following actions pertaining to Plaintiff.

29.     On December 12, 2023, Plaintiff received an interview notice scheduled for January 25, 2024, for the SES OCRDI Director position for which she was eligible and well qualified.

30.     On December 27, 2023, Plaintiff formally filed her second EEO Complaint Number 2024-0012.

31.     On January 8, 2024 — 12 days after Plaintiff filed her second EEO complaint — Ms. St. Clair told Plaintiff an EEO complaint was filed against Plaintiff, and that Mr. Colclough had settled it through the RESOLVE Program. Plaintiff told Ms. St. Clair that Plaintiff was stunned to hear this because she was unaware of any complaints filed against her in the last two years. Plaintiff pressed Ms. St. Clair for details, and Ms. St. Clair said the complaint was made prior to the time she became Plaintiff's supervisor. When Plaintiff pressed further, Ms. St. Clair said that Ms. Krista Watson, Outreach and Education Coordinator (OEC), EEOC Phoenix District Office, filed the complaint. Plaintiff told Ms. St. Clair that Ms. Watson's complaint was filed over two years ago.

32.     Ms. St. Clair said the terms of the RESOLVE settlement agreement required that Plaintiff complete a two-hour training course on communication which had to be completed within

45 days. However, instead of a two-hour class, Ms. St. Clair directed Plaintiff to complete a much lengthier full 2-day virtual training course, "*How to Communicate with Tact and Professionalism*," from Fred Pryor seminars. Ms. St. Clair said she required Plaintiff to take the 2-day course because Ms. St. Clair wanted to know whether Plaintiff thought it was a class that: 1) Ms. St. Clair would want to take; and 2) it would benefit the Field Coordination Programs team members. Plaintiff was not asked by Ms. St. Clair to take such a class before for these stated reasons.

33.     On January 8, 2024, Plaintiff called Mr. Colclough after her call with Ms. St. Clair. Mr. Colclough said the matter involved Ms. Watson's EEO complaint that was filed in 2021. When Plaintiff asked him when the investigation report was completed, Mr. Colclough said that the investigator did not complete the report because it was submitted to RESOLVE. Mr. Colclough said that he manages the RESOLVE program and was responsible for negotiating this settlement agreement with Ms. Watson. Under the agreement, Ms. Watson was reassigned to the OCDRI division effective January 16, 2024, and Plaintiff was required to complete two hours of training because she allegedly made a derogatory comment in an email to Ms. Waston.

34.     Plaintiff told Mr. Colclough that she was upset about this because, to date, Ms. Watson has never apologized for her offensive slide in her training deck nor her conduct after Plaintiff brought it to her attention. Mr. Colclough said he understood that Plaintiff was "losing steam, but since it was in an email, [he] had to resolve it." Specifically, Mr. Colclough said that one of the things he looks at in doing RESOLVE is "what is the easiest thing that we can do for the organization." The most important thing to him was that Ms. Watson moved out of her OEC role. Plaintiff told Mr. Colclough that Ms. St. Clair required her to complete a 2-day training course, he said the agreement was only for two hours and there was flexibility in completing it.

10

35.     Plaintiff was very concerned about the timing of this "communication" matter. On January 9, 2024, Plaintiff sent Mr. Colclough a chat message reflecting her concern and stated, "This should not go in my personnel file. In FY-22, I received a 5.0 overall evaluation score, and an outstanding rating in communication." Mr. Colclough responded, "Nothing about this is going in your file." Plaintiff said, "I also heard she [Ms. Watson] is going to OCRDI" and he replied, "that is correct."

36.     Prior to January 8, 2024, Plaintiff's personnel file and performance evaluations do not reflect that she had any communication problems with Ms. Watson. The incident with Ms. Watson occurred on October 1, 2021, and she filed her EEOC complaint on December 10, 2021.

37.     The following is a summary of the underlying events that occurred on October 1, 2021. On September 28, 2021, Ms. Watson sent Plaintiff a slide deck containing 257 slides to review for a training program that she was conducting on October 1, 2021. The slide deck contained a section of slides on "unconscious bias" training. Plaintiff flagged this section because the OECs had been instructed not to conduct "unconscious bias" training since February 2021.

38.     On September 30, 2021, Plaintiff discussed the slide with Ms. Watson. Plaintiff shared with Ms. Watson that Black men in the audience and Black persons in general would be extremely offended by the slide because the immediate perception is the Black men cannot be trusted and other negative connotations particularly in the aftermath of the George Floyd protests. Plaintiff told her that Plaintiff found it extremely offensive, triggering, and alarming that it was circulating in an EEOC training deck for the public. Ms. Watson's response was patently offensive and dismissive because: 1) she said nothing was wrong because the slide was addressing unconscious mental processes; 2) she refused to acknowledge that the slide reflected her own unconscious bias as the trainer; 3) she dismissed Plaintiff's concerns as the Associate Director,

11

Curriculum, Training and Education; and 4) she refused to apologize for using it. Plaintiff worked

through the night to revise Ms. Watson's deck (which she approved in the morning).

39.     On the morning of October 1, 2021, Ms. Watson emailed the entire OEC Group and

said, "I will be sharing with you all when I am taking the Critical Race Theory course ASU

[Arizona State University]!" That evening, Ms. Watson emailed Plaintiff (and copied her

supervisors) with criticisms about the deck. Plaintiff responded:

> "Krista,
>
> Your response has compelled me to be blunt. The deck you sent with over 260
> slides (a whole section of which were prohibited and contained offensive
> images) was a poorly prepared work product that was not something that I would
> have ever expected from someone with your self-professed level of experience
> and skills.
>
> The deck that I spent countless hours on (including working past midnight)
> during a week of fiscal year end responsibilities to develop exclusively for you
> reflects a work product that I would've expected from someone with your self-
> professed level of experience and skills.
>
> Your comments below are arrogant and reflect a complete lack of cultural
> humility. Check your white privilege. I suggest you do that first before you take
> the course on critical race theory.
>
> Kat"

40.     On December 10, 2021, Ms. Watson filed an EEO complaint against Plaintiff and

alleged that Plaintiff created a hostile work environment based on Ms. Watson's race (White).

Plaintiff submitted her affidavit and documents to the investigator and heard nothing more about

this until January 8, 2024. Plaintiff's communication skills were not a problem when this incident

happened or in the FY-22 review period during which it occurred. In FY-22, Plaintiff received a

5.0 outstanding performance rating in all categories (including communication) from her previous

supervisor, Ms. Delner Franklin-Thomas, Acting OFP Director. On October 30, 2023, Plaintiff

received a highly effective performance rating on communication from Ms. St. Clair for FY-23.

41.     On January 8-9, 2024, 759 days after Ms. Watson filed her EEO Complaint but only 12 days after Plaintiff filed her second EEO Complaint on December 27, 2023, Mr. Colclough and Ms. St. Clair told Plaintiff for the first time that that she had "communication" problems concurrent with Plaintiff's pending applications for the SESCDP and the SES OCDRI Director position. On January 11, Plaintiff registered for the course, attended on January 22-23, 2024, and notified Mr. Colclough and Ms. St. Clair that she completed it. On January 31, 2024, Plaintiff was notified of her non-selection for the SESCDP Class #24.

42.     Plaintiff did not and does not have communication problems with Ms. Watson. Prior to January 8, 2024. In fact, she and Plaintiff exchanged positive emails in December 2023.

43.     On January 11, 2024 — before the official announcement on January 16, 2024 —, Ms. Watson emailed Plaintiff that she was reassigned to a newly created position as the Management and Program Analyst – In-reach and Training Specialist for OCRDI and said:

> "I am excited about the new position. I know I have a ton to learn and plan taking as many online classes as possible I can. ***I wish I had your knowledge in this area!*** I can just do the best I can and hope I don't make a mess of it. I have learned there is no agreement, and everyone has an opinion and conflicting opinions. Anyway, I am always here if you need something historic or prior EEOC national ppts (FEPA; Internal Training; EXCEL and more) or anything. I've seen a lot of RF directors in my career, obviously you are the first content person, but I know how difficult the job can be especially when you probably haven't been able to focus too much on content with the registration issues and more over the last couple of years. I do wish you the best and I hope we stay in touch." (emphasis in original).

Ms. Watson obtained approval from her supervisor to assist Plaintiff in the transition process of obtaining continuing education credits for fee-based workshops. As Plaintiff's schedule permits, she has provided Ms. Watson with help in her new role.

44.     On January 24, 2024, Ms. Watson asked Plaintiff to help her design a new PowerPoint template for internal OCRDI training.

13

45.     On February 8, Ms. Watson asked Plaintiff to co-present with her on a 90-minute overview for "Right to Be" internal OCRDI staff training on February 22, 2024. Ms. Watson said:

> "I would love to have you participate, but I understand your schedule would probably not allow it and I am not sure how you would feel about collaborating with me on it. I just need this to be good good"

Plaintiff told Ms. Watson that while she had no problem doing it, her schedule was full, and Plaintiff did not have the time to give that important topic the attention it deserved.

46.     In her LinkedIn post on February 14, 2024, Ms. Watson publicly acknowledged and praised Plaintiff for the superior leadership communication skills that she has demonstrated in the three years in her role as the Associate Director, Curriculum, Training and Education.

47.     Plaintiff was improperly excluded from the RESOLVE process and was not provided an opportunity to learn that the 2021 allegation against her were still pending in 2024. Nor was Plaintiff allowed to participate in a defense (given the egregious circumstances), or in fashioning a remedy. Plaintiff was simply informed of someone else's (uninformed) decision. Finally, Ms. St. Clair over-reached by requiring a ten-fold increase in the training time that was agreed to in the RESOLVE process.

48.     Plaintiff, a Black woman, was punished for opposing an unlawful EEO practice while Ms. Watson, a White woman, was rewarded. The very writing of Plaintiff's email to Ms. Watson was protected activity under Title VII. As a White woman, the ramifications of Ms. Watson' conduct resulted in reassignment to OCRDI. The ramifications for Plaintiff as a Black woman, was to be silenced, have her rights discarded, and be subjected to racial harassment simply for doing her job as the Associate Director, Curriculum, Training and Education. Moreover, the position the agency placed Ms. Watson in, as a settlement of her complaint, is directly responsible for conducting internal bias training at the EEOC. The agency message seems to be that acting on

14

implicit biases and denying white privilege is perfectly acceptable, within the nation's premier civil rights agency, and that calling out such behavior will be punished.

49.    Moreover, additional harassment and reprisal are evident in the way Plaintiff was excluded from the interview and selection process for the SESCDP. Plaintiff submitted substantially the same narratives for her Executive Core Qualifications (ECQs) for both the agency's SESCDP position and the SES OCRDI Director position. And while Plaintiff was interviewed for the SES OCRDI Director position, which is a direct appointment to an SES position, in reprisal for having filed her previous discrimination complaints, Plaintiff was not interviewed for the EEOC's SESCDP, which is essentially a program designed to enhance qualifications for SES positions. The SES position for which Plaintiff *was* interviewed requires a higher level of accomplishment and experience. So, it creates a pretextual question as to how Plaintiff was selected for an interview in a program that requires a higher level of accomplishment and experience and not selected for the other program which does not.

50.    Each of these instances described above has caused Plaintiff great emotional distress and has been humiliating and demeaning. Plaintiff should not have been subjected to racial harassment and reprisal, especially as an EEOC employee and a member of OFP Senior Staff. Moreover, Plaintiff alleges that her record has been permanently tarnished by the retaliatory requirement that she attend a communication class and that will damage her ability to move into more challenging and remunerative roles throughout the rest of her government career. Additionally, Plaintiff has been denied the opportunity to even interview for the EEOC's SESCDP position and denied selection for that program.

## COUNT 1

### SECTION 501 DISABILITY RETALITION AND DISCRIMINATION

51.     Plaintiff, KATRINA GRIDER, realleges and adopts, as if fully set forth herein, the allegations  stated in Paragraphs one (1) through fifty (50).

52.     Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990 (ADA), The ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12101, *et seq*., 29 C.F.R. 1614.203(b) 2008, and the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act").

53.     Defendant has engaged in repeated acts of unlawful retaliation and discrimination against Plaintiff for exercising her rights under Section 501 of the Rehabilitation Act, as amended. Specifically, Defendant's unlawful acts include:

54.     Reprisal for engaging in protected activity with filing EEO Complaint Number 2023-0013 (settled on March 9, 2023) seeking a seeking a reasonable accommodation due to Plaintiff's mental disability and has unlawfully discriminated against her in connection with Plaintiff's physical and mental disability under Section 501.

55.     Denial of placement to a 60-day detail for the DEIA Director Detail-OCRDI ("Detail") for which Plaintiff was well qualified.

56.     Failure to promote and denial of selection to the Supervisory Attorney Adviser (General) GS-0905-15 OCRDI DEIA Director position ("Director") (Announcement Number DE-11996572-23-RB) for which Plaintiff  was well qualified.

57.     Failure to nominate for one of the Chair's awards ("Award(s)") for which Plaintiff was eligible and well qualified.

58.     Denial of selection in the EEOC Senior Executive Service Candidate Development Program (SESCDP) (Announcement CDP-12118371-23-JB) for which Plaintiff was eligible and well qualified.

59.     Failure to provide a reasonable accommodation.

60.     Subjecting Plaintiff to a discriminatory and retaliatory hostile work environment.

61.     The Agency's unlawful and discriminatory practices toward Plaintiff were intentional.

62.     The Agency's unlawful and discriminatory practices were done with malice or with reckless indifference for the federal protected rights of Plaintiff.

63.     The Agency's unlawful and discriminatory practices were done with malice or with reckless indifference for the federal protected rights of Plaintiff.

WHEREFORE, Plaintiff prays for the following damages against the Agency:

a.      Grant Plaintiff a permanent injunction enjoining Defendants, its agents, successors, employees, and those acting in consort with Defendants, from continuing to violate Plaintiff's rights;

b.      Issue an order awarding Plaintiff back pay, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above, including but not limited to reasonably accommodating Plaintiff;

c.      Back pay and benefits;

d.      Lost wages;

e.      Prejudgment interest and post-judgment interest as allowed by law on back pay and benefits;

17

f.      Front pay and benefits;

g.      Compensatory damages for emotional pain and suffering, inconvenience, reputational harm, emotional distress, physical pain and suffering, loss of enjoyment of life and humiliation;

h.      Attorney's fees and costs, including but not limited expert witness fees;

i.      Injunctive relief; and

j.      For any other relief this Court deems just and equitable.

## COUNT 2

## TITLE VII RETALIATION, HARASSMENT AND DISCRIMINATION

64.    Plaintiff, KATRINA GRIDER, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-two (62).

65.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

66.    Dedendant has engaged in unlawful retaliation, harassment, and discrimination under Title VII of the Civil Right Act of 1964, as amended. Specifically, Defendant's unlawful acts include:

67.    Ongoing retaliatory harassment.

68.    Reprisal for engaging in protected activity with filing EEO Complaint Number 2024-0012 (filed December 27, 2023).

69.    Reprisal for engaging in protected activity and opposing any practice made unlawful under the EEO laws with filing the Brief Description of Allegations (filed February 21, 2024).

70.     Reprisal for opposing any practice made unlawful under the EEO laws, including but not limited to Plaintiff's filing the aforementioned EEO Complaints.

71.     Racial harassment.

72.     Subjecting Plaintiff to a discriminatory and retaliatory hostile work environment.

73.     Denial of selection in the EEOC Senior Executive Service Candidate Development Program (SESCDP) (Announcement CDP-12118371-23-JB) for which Plaintiff was eligible and well qualified.

74.     Failure to promote and denial of selection to the Supervisory Attorney Adviser (General) GS-0905-15 OCRDI DEIA Director position ("Director") (Announcement Number DE-11996572-23-RB) for which Plaintiff was well qualified.

75.     Denial of placement to a 60-day detail for the DEIA Director Detail-OCRDI ("Detail") for which Plaintiff was well qualified.

76.     Failure to nominate for one of the Chair's awards ("Award(s)") for which Plaintiff was eligible and well qualified.

77.     The Agency's unlawful and discriminatory practices toward Plaintiff were intentional.

78.     The Agency's unlawful and discriminatory practices were done with malice or with reckless indifference for the federal protected rights of Plaintiff.

WHEREFORE, Plaintiff prays for the following damages against the Agency:

a.      Grant Plaintiff a permanent injunction enjoining Defendants, its agents, successors, employees, and those acting in consort with Defendants, from continuing to violate Plaintiff's rights;

b.  Issue an order awarding Plaintiff back pay, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole and compensate her for the civil rights violations described above, including but not limited to reasonably accommodating Plaintiff;

c.  Back pay and benefits;

d.  Lost wages;

e.  Prejudgment interest and post-judgment interest as allowed by law on back pay and benefits;

f.  Front pay and benefits;

g.  Compensatory damages for emotional pain and suffering, inconvenience, reputational harm, emotional distress, physical pain and suffering, loss of enjoyment of life and humiliation;

h.  Attorney's fees and costs, including but not limited expert witness fees;

i.  Injunctive relief; and

j.  For any other relief this Court deems just and equitable.

Dated this 8th day of February 2025         Respectfully submitted,


/S/ Ashok Bail

_____

Ashok Bail
Attorney for Plaintiff
3120 Southwest Freeway, Suite 450
Houston, TX 77098
Tel. No. (832) 216-6693
Fax. No. (832) 263-0616
E-mail: ashok@baillawfirm.com
Attorney for Plaintiff
The Bail Law Firm, PLLC


Of Counsel:

Katrina Grider
The Grider Law Firm
14227 Prospect Point Dr.
Cypress, TX 77429
Tel. No. (281) 382-4948
Email: kat@griderlawfirm.com
The Grider Law Firm